## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION


**JOHNNIE C. ROBINSON,**

      **Petitioner,**

**vs.**

                           **CASE NO. 4:07cv35-SPM/WCS**

**JAMES McDONOUGH,**

      **Respondent.**

_____/


### AMENDED REPORT AND RECOMMENDATION[1]

      This is an amended petition for writ of habeas corpus filed by Johnnie C. Robinson pursuant to 28 U.S.C. § 2254. Doc. 5. Petitioner challenges his conviction for possession of cocaine and drug paraphernalia in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 04CF02619. Respondent filed an answer, doc. 12, and the record in paper form. Petitioner filed a traverse. Doc. 14. Respondent agrees that the petition was timely filed. Doc. 12, p. 4.

_____

      [1] This report and recommendation replaces document 13, the original report and recommendation. It is entered to consider Petitioner's traverse. Doc. 14. The traverse was timely filed because it was submitted for mailing on November 30, 2007. *Id.* It was not docketed in this court, until my original report and recommendation had been filed.

**Section 2254 Standard of Review**

"Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court.  28 U.S.C. §§ 2254(b)(1), (c)."  O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730, 144 L.Ed.2d 1 (1999).  To properly exhaust remedies as required by § 2254(b), "the federal claim must be fairly presented to the state courts."  Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995) (citing Picard).

If a claim was not fairly presented but is procedurally barred from further state court review,[2] Petitioner must demonstrate cause for the default and actual prejudice, or demonstrate that the constitutional violation has probably resulted in conviction of an innocent person.  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2565, 115 L.Ed.2d 640 (1991); McCleskey v. Zant, 499 U.S. 467, 494-95, 111 S.Ct. 1454, 1470-71, 113 L.Ed.2d 517 (1991).

For claims that were properly exhausted and adjudicated in state court, this court's review is limited.  "[A] determination of a factual issue made by a State court shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); Bui v. Haley, 321 F.3d 1304, 1322 (11th Cir. 2003) (citing the statute, footnote omitted).  Moreover, as to a factual issue adjudicated by the state court, Petitioner must show that

---

[2] Procedurally defaulted claims are considered technically exhausted because state court remedies no longer remain "available."  The court therefore refers to "fairly presented" claims as having been properly exhausted, to distinguish them from claims exhausted by procedural default.  See O'Sullivan, 526 U.S. at 848, 119 S.Ct. at 1734.

the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2); 321 F.3d at 1322 (citing the statute).  Section 2254(d)(2) is satisfied "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748 , 752 (8th Cir. 2003) (citing § 2254(e)(1), other citation omitted).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).  "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings.  Hawkins v. Alabama, 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted); Carey v. Musladin, 549 U.S. __, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  Williams v. Taylor, 529 U.S. 362, 404-406, 120 S.Ct. 1495, 1519-1520, 146  L.Ed.2d 389 (2000); Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citing Williams).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may

grant the writ if the state court identifies the correct governing legal
principle from this Court's decisions but unreasonably applies that
principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. at 412-413, 120 S.Ct. at 1523; 535 U.S. at 694, 122 S.Ct.

at 1850.  *See also*, Panetti v. Quarterman, __ U.S. __, 127 S.Ct. 2842, 2858-2859, 168

L.Ed.2d 662 (2007) (discussing the unreasonable application standard) (citing Williams,

other citations omitted).

**Legal Analysis**

Petitioner was originally charged with manufacturing crack cocaine, possession

of cocaine with intent to deliver, maintaining a place where controlled substances are

used, and possession of drug paraphernalia.  The trial court granted a judgment of

acquittal as to manufacturing cocaine and maintaining a place where controlled

substances are used, and found the evidence insufficient to show "intent to deliver"

cocaine as to count two.  The jury convicted Petitioner of simple possession of cocaine

and the paraphernalia charge.

The sentence on the paraphernalia charge, 66 days, concurrent to the five year

sentence on the possession of cocaine count, has been completely served, doc. 12, Ex.

G, so Petitioner is no longer in custody on that charge and may not challenge it here.

The court lacks jurisdiction to consider a challenge to a conviction if the petition has

been filed after the sentence from that conviction has completely expired.  Maleng v.

Cook, 490 U.S. 488, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989).

Ground one and two are not materially different and will be considered as one

claim.  Petitioner contends that the trial court erred in failing to a grant judgment of

acquittal for lack of sufficient evidence as to the simple possession.  Petitioner argues that:

> the house for which the drugs were found was in control of a person by the name of Reddick and that the petitioner was never seen by anyone to be entering the said house, in fact the state's witness stated at trial that the only time he saw the petitioner in the house was when he (the landlord) was installing new carpet and the petitioner helped, that no drugs were seen at the time or at any time.

Doc. 5, p. 5 on the electronic docket.  Petitioner also argues that his fingerprints were not found "throughout the house," and "there was no verification that any of the clothing within the home fit or was of the same size of the petitioner, therefore not even proving that the room in question was occupied by the petitioner . . . ."  *Id.*

It is "an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense."  Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L.Ed.2d 560 (1979); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  The federal due process issue is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  443 U.S. at 319, 99 S.Ct. at 2789 (emphasis by the Court); Fallada v. Dugger, 819 F.2d 1564, 1570 (11th Cir. 1987).  In other words, the petition may be granted "only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985).  The test is a limited one, and "[i]t is not required that the evidence rule out every hypothesis except that of guilt

beyond a reasonable doubt."  Wilcox v. Ford, 813 F.2d 1140, 1143 (11th Cir.), *cert. denied*, 484 U.S. 925 (1987).  "The simple fact that the evidence gives some support to the defendant's theory of innocence does not warrant the grant of habeas relief." *Id.* Finally, the sufficiency of the evidence must be determined with reference to the substantive elements of the offense as defined by state law.  *Id.*; Machin, 758 F.2d at 1435, n. 2.

Respondent argues that the claim presented in state court was not the federal claim that must be brought before this court.  Respondent points to the fact that in the opinion adjudicating this claim on appeal, the First District Court of Appeal observed that this was a circumstantial evidence case, and the rule in Florida is that the circumstantial evidence "must be inconsistent with any reasonable hypothesis of innocence."  Doc. 12, Ex. L, pp. 2-3; Robinson v. State, 936 So. 2d 1164, 1166 (Fla. 1st DCA 2006), *citing*, State v. Law, 559 So. 2d 187, 188 (Fla.1989) and P.M.M. v. State, 884 So. 2d 418, 419-20 (Fla. 2d DCA 2004).  As explained above, the federal due process standard does not require the exclusion of any reasonable hypothesis of innocence.

The appellate decision first recited Florida law on how constructive possession is determined.  The court said:

> Proof of guilt based on a constructive possession theory consists of three basic elements:
>
> (1) The accused must have dominion and control over the contraband.
>
> (2) The accused must have knowledge that the contraband is within his presence, and;

> (3) The accused must have knowledge of the illicit nature of the contraband.

936 So. 2d at 1166 (citations omitted); Ex. L, p. 3.  The court then held that "the State presented evidence to support every element of possession of cocaine and possession of drug paraphernalia."  *Id.*  There was no discussion about how any specific hypothesis of innocence was excluded.  Nor was any particular hypothesis of innocence argued by Petitioner at the trial level.  Doc. 12, Ex. C, pp. 178-183.  Instead, Petitioner argued that the evidence was not sufficient to show constructive possession.  *Id.*

But whether the federal claim was adequately argued before (as opposed to "reached" or "discussed by") the state courts, it is easier here to reach the merits since the claim is so clearly without merit.  "An application for writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

The appellate decision thoroughly discussed the trial evidence, and that discussion suffices to show the sufficiency of the evidence:

> According to Investigator Sam Gereg, of the Vice and Narcotics Unit of the Tallahassee Police Department, a search warrant was served at a very small house at 1809 West Pensacola Street on July 2, 2004.  No one was at home when the warrant was served.  Richard Singletary testified that he owned this rental property; he estimated the size of the home to be 800-900 square feet.  The house has two bedrooms (designated northwest and southwest by the authorities for purposes of location and description), a kitchen, and a living room.  At the time of the search, Charles Reddick was named on the lease of the home and had been a tenant for about one and one-half years.  Appellant's name was not on the lease, and the owner had no rental agreement with him.  The owner testified that Appellant was the only roommate about whom he knew, but the owner could not say for certain that Appellant was a roommate.  However, the owner frequently saw Appellant coming and going at the house, as many times as two or three times a week over a six- to eight-week period when the owner was working on his next-door rental

property.  It was not unusual for the owner to allow roommates who were not named on the rental agreement; in fact, he allowed it "all the time." The owner testified that Appellant sometimes had brought the rent payment to him on Mr. Reddick's behalf and had received a receipt made out to Mr. Reddick.  The owner testified that after he was asked to change the carpeting in the house, he went inside the home and Appellant helped him with this project.  The owner had never seen drugs or drug paraphernalia in the home.

For purposes of resolving the issue on appeal, we focus on the northwest bedroom in the home.  Investigator Gereg testified the northwest bedroom had a small dresser, wall shelving, a very small futon-type single bed, and a closet.  This bedroom was fully decorated, appeared fully furnished and occupied, and had Coca-Cola souvenirs and other mementos on the shelves.  Everything observed by the investigator during the search indicated that only one person, Appellant, resided in that bedroom.  A shoebox was filled with photographs that consistently included a gentleman whom the witness identified as Appellant.  Various items of paperwork were found on the dresser just inside the bedroom door and on the shelves and by the closet.  In that bedroom, every piece of paper that had a name on it had Appellant's first name or his full name, and no other paperwork was found with anyone else's name on it.  The paperwork included an envelope addressed to Appellant, and a second one (postmarked late April 2004) addressed to "Shamaka and Johnny," although both envelopes listed a different address from that of the home searched.  Investigator Gereg testified from personal knowledge that the envelope listing Appellant's name alone had an address that had been Appellant's mother's address for seven years.  The investigator found Western Union money transfer forms listing Appellant as the "Sender."  A deposit form listed "Johnny" as the first name, and a handwritten note with a date of May 2, 2004, was sent to "Johnny."  A civil writ of bodily attachment from a court addressed to Appellant (at a different address from the searched home) indicated his child-support arrearage.  Three U.S. Postal Service receipts found in the bedroom were dated June 8, 2004, i.e., less than a month before the search warrant was served.

Investigator Gereg testified that the small, waist-high dresser was in the northwest bedroom just inside the door.  The top drawer had underwear in it; another drawer had T-shirts.  The drawers did not contain dividers to suggest that two people were sharing the space.  The small closet had a full wardrobe, and all the shoes and clothes appeared to be of one consistent size.  The witness opined that the room appeared to be fully occupied.

Investigator Gereg testified that a plastic bag found in the top drawer of the dresser in the northwest bedroom contained 8.72 grams of crack cocaine.  Another 6.54 grams of powdered cocaine was found in the same dresser.  The photographic evidence indicates one of these plastic baggies was found wrapped in what appears to be a pair of men's boxer shorts.  A 302-gram bag of white, powdery "Come Back Incense" was found in a black shopping bag on a shelf in that bedroom.  Numerous small plastic bags were found in the third drawer and on top of the dresser.  Having been qualified as an expert in the field of the sale of narcotics and possession of drug paraphernalia, Investigator Gereg opined that white, powdery, and odorless incense of the kind found in the northwest bedroom is frequently sold for use as a cutting agent for cocaine.  That is, cocaine is an expensive substance, this type of incense is much cheaper, and the substances are mixed to allow the resulting lower-quality cocaine, of an enhanced volume, to be sold for a much greater profit.  The witness opined that this kind of odorless incense, as it was specifically labeled and packaged, has no other use than as a cutting agent for cocaine.  "Come back" is a term used when powdered cocaine is cooked into crack cocaine.  Investigator Christopher Corbitt, of the Tallahassee Police Department, testified consistently with Investigator Gereg regarding the evidence recovered from the northwest bedroom and the kitchen.

Jeff Fennell, a former Tallahassee Police Department forensic specialist who was admitted as an expert in fingerprint analysis and comparison, testified that among the numerous small plastic baggies found in the dresser, Appellant's fingerprint was found on one of them.  His fingerprints appeared also on a baggie that was found in a cooler.  Neither of these two baggies contained illegal contraband.

According to Investigator Gereg, the other bedroom, the southwest one, had paperwork and items addressed only to the named lease tenant, Mr. Reddick.  That second bedroom had a small dresser.  The clothing found in that bedroom indicated the room was occupied by only one person, Mr. Reddick.  Plastic baggies were found in the southwest bedroom too, as was a small digital scale of the type commonly used to measure out sale-size quantities of illegal drugs.

Atop some cabinets in the kitchen was a large glass measuring cup with whitish cocaine residue on the bottom, which Investigator Gereg believed was used to cook crack cocaine.  Numerous small plastic baggies were found throughout the kitchen.  On a shelf directly behind the stove, the investigators found a beverage can of Mountain Dew soda, the top of which screws off, disclosing a hidden container of the type frequently used

to conceal illegal narcotics.  A package of incense was found on the kitchen counter.

The State's evidence is sufficient for the jury to have found, beyond a reasonable doubt, that Appellant exclusively and regularly occupied the northwest bedroom within the time period shortly before the home was searched; that Appellant had dominion and control over the contraband found among his personal items in the northwest bedroom; that he knew the contraband was in his presence and was illicit; and that someone else, apparently Mr. Reddick, occupied the other bedroom.

936 So. 2d at 1167-1169.

The evidence was sufficient to show that Petitioner lived in the room, knew that cocaine was in the room, and exercised dominion and control over the drugs. Petitioner's concept of "possession," as reflected in his traverse, is simply wrong.  It did not matter that Petitioner was not in the residence when the search was conducted. It was enough that the jury might find, as it did, beyond a reasonable doubt that Petitioner lived there, had all of his personal property there, and exercised dominion and control over the places where the drugs were found.  Petitioner did not have to be caught with drugs in his hand or his pocket.  Possession may be proved by circumstantial evidence, and it often is in drug cases, as here.  Further, evidence that Petitioner's roommate, Reddick, was also dealing in drugs, does not meant that the jury could not lawfully conclude from the above circumstantial evidence that Petitioner also was in possession of drugs.  Petitioner's two grounds, considered as one, are without merit.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by Johnnie C. Robinson, challenging his convictions for possession of cocaine and drug paraphernalia in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 04CF02619, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on December 5, 2007.


s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**<u>NOTICE TO THE PARTIES</u>**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**